Case number 18-7185. K&D LLC trading escort appellant v. Trump Old Post Office LLC, et al. Mr. Morrison for the appellant, Mr. Keneally for the affidavit. Mr. Morrison. May it please the court. The claim in this case is based on the unfair competition law of the District of Columbia as applied to elected officials. The specific legal basis for this claim is that when an elected official runs a business in the District of Columbia and obtains unfair competition advantages, not because of the quality of the product or the prices that the business charges, but because of the perception by those who patronize the business that doing so will curry favor with the owner of the business, who is a government official, whom they believe will provide benefits to them that are the government's to give away and not to the individual. Mr. Morrison, what's your best case for your unfair competition claim? The other side has lots of cases. I couldn't find any for years. There is no case, which we are aware, that involves an elected official who has owned a business of this magnitude or any... Why isn't that a pretty serious problem for your claim? Well, Your Honor, we brought this case in the Superior Court of the District of Columbia, where we believe that the Superior Court, which has not seen an unfair competition case since 1982, and the last time it saw a case, it dealt with the unfair competition points in a footnote. We believe, in accordance with the... There is law in the District of Columbia about unfair competition, right? Well... Interference and all these sorts of things, none of which are part of your case. Yes, Your Honor. None of which are part of your case. So you're asking us to extend the law. You don't have any case under D.C. law that resolves this for us. You're asking us to extend the law. Your Honor, we did not ask the Federal courts to extend the law. We asked that the Superior Court... The case was removed from the court where it belonged, in our view, where the common law of the District of Columbia could be properly developed. And we asked that it be filed... We heard there, the case was removed. We objected to removal and we asked for remand. The remand was denied. And we are here with our principal argument that we are not asking for this court to decide the case. And even if this court has jurisdiction, we also believe that it would be appropriate to certify the question to the D.C. Court of Appeals. If the D.C. Court of Appeals believes that we do not have a claim, then we are out of claim. And this is precisely the kind of question that ought not to be decided by the Federal courts. Since we've jumped ahead to the merits, away from the question of quorum, it would seem to me that to prevail, you would have to indicate... You would have to look at the four cases finding unfair competition under the District of law and develop from them some general proposition within which your case fitted. And I'm not sure that you've done that. Well, I think that the question of... Under the District law, there is no case that the District court has... All of the cases that have been cited are cases from the Federal court here in the District of Columbia, District court here in the District of Columbia. The last case was 1982. And in the footnote that described what might constitute unfair competition, among other claims, the court said, the following may include. Citing Proser on torts, which said exactly the same thing, the following may include. And the real question is whether the kind of competition is the kind that our robust economy says ought to go forward. Better products, better service, whatever else it is. None of them. But you don't point us to any generality in these opinions that sustains that broad view. I mean, they don't say this is an unfair competition here because this is simply an example of the following principle. Well, most of them are examples of what the court found was fair competition. This is the opposite. It's unfair competition because the owner of the property is taking advantage of his position as a government official. And his staff and friends and associates are impliedly, in some cases directly, promoting the use of the property as a means of gaining access to the government official. Any definition of fair does not include, in our view, that kind of activity. And the fact that no one has done this before, Your Honor, doesn't mean that the District of Columbia can't. No, but they have done something parallel. Well, I suppose, Your Honor, it depends on the level of generality at which you define parallel and how parallel it has to be. All of the other cases involve, if you consider, for example, blocking the interest of somebody's business as unfair, at some level of generality, that's unfair. What about the Proxmire case? Well, of course, in the Proxmire case... Isn't that the same general opinion as what you're asserting? Well, nobody in that case asserted that Senator Proxmire had promised anyone any benefits. Mrs. Proxmire had not promised any benefits from the senator if they patronized her business. That would be the parallel. I thought in connection with the removal issue, you retreated from any suggestion of affirmative offers of benefits from patronage of the hotel. Your Honor, on the removal issue, what we said was that the evidence we had at the time that the complaint was filed and every one of the allegations of acts in the complaint did not involve acts taken by Mr. Trump after he became President of the United States. Most of our activities, and there was no removal question in the Proxmire case because the case was filed in federal court, but there was no evidence that Mrs. Proxmire, to analogize what we have here, was indicating that her husband would give anyone any benefits by patronizing her. And that would be the analogy to this case. Is that the analogy? Because as I read your brief, the brief that Ted said, your legal theory is that when elected officials derive economic benefits from a business in the District of Columbia while in office, doing so is seen as creating an unfair advantage over competitors. And likewise, in your reply brief, you say, the principle of unfair competition under district law is that it is unfair to competitors for elected officials to own business in the district because they can use their political clout. Is your principle that it is the mere fact of ownership of a business by an elected official? That is unfair competition. That's the way you put it in the brief. Let me quote you from paragraph 18 of our complaint. I'm just asking you, this is what you say in the brief. Are you stepping back from that? Or is your position only if there are acts of implied benefit? Or is the idea that a high government official who owns a business while acting as an official is sufficient to be unfair competition? Your Honor, we have pled in this case that there are affirmative acts undertaken on behalf of the business. That's paragraph 18 of our complaint. That may go to continuation or damages. But I'm only interested in the question is what you understand to be the principle of district of Columbia fair competition law that you are asking us to uphold. Well, the minimum principle would be the first statement that Your Honor made, simply the ownership of the business while elected in office. We believe that in this case, Your Honor, does not have to reach that because we have additional obligations, which is paragraph 18. And this is a common law question. It is, Your Honor. And I take it your argument, you said in your brief that there's no case remotely like this. Correct, Your Honor. Anywhere in the country. Is that right? I don't say that we said remotely and anywhere in the country. It depends on how much remote, Your Honor. Is there any case that adopts this principle as a principle of the common law? No, Your Honor. There's no case that adopts the opposite principle. I understand. But that's not the question I'm asking. I understand your question. I answered both. You're asking us to do what a common law judge would do in the district of Columbia. Think about the evolution of the common law. And I'm asking you what is the evidence that the common law has evolved toward the principle that you're asking us to uphold? Your Honor, I could point to no specific case. I could point to the general statements in the American Law Institute's first restatement of torts. But those are about the common law evolving. They aren't about where it's evolving to. Yes, Your Honor. And if I may say this again, this is specifically the reason that we filed the case in the district of Columbia Superior Court, that the common law should develop in the courts in which it is sitting, in the jurisdiction. Even in that court, you would be asked, what is the indication that the common law has evolved in this? Why are there no other cases on this that are like this? Why is there no other case that has taken an elected government official who's operating a business and claimed a right of fair competition against them? There are no other cases because, Your Honor, I believe what the defendant did here is unique. All right. Well, let me ask you about that. So 20 percent of the Maryland General Assembly are active lawyers. They are competing with all the other lawyers in Maryland. Thirty-seven percent of the Virginia General Assembly, exactly the same. The governor of Maryland has a real estate business, which competes with other real estate businesses. The governor of West Virginia owns the Greenbrier Hotel, a luxury hotel. Michael Bloomberg, when he was the mayor of New York, had a major financial business. And John Hickenlooper, when he was the mayor of Denver, had some kind of craft brewery and some number of restaurants. I think seven. Now, this suggests, in fact, overall, many, many state legislatures across the country are also active lawyers because they're only in session part-time. Given all of that, why is there not a single – if the common law is evolving in the direction you say, why is there not a single case, as far as we can tell in history, that has evolved in that direction? Many clients are not anxious to sue politicians who have substantial interests and have substantial ability to adversely affect their operations as well. This is a competitor-standing case, and it is brought by an organization that's willing to step forward. I think that most people would be unwilling to step forward in this situation, but most people don't also have what we've alleged in this case is not simply that they are in business, lawyers are in business, but that the business itself is touting, paragraph 18, the availability of the elected official to do favors for those who patronize the business. That is a distinguishing feature, and I am not aware of other situations where that has happened. Perhaps it has happened. Perhaps other officials do it in a different way. But that, I think, would explain it. That's why when Your Honor asked me what a proposition is, the first proposition is elected officials, and then we would say when they are specifically touting the business as a means of access to the elected official, with the business itself and others as well. And so that is the basis on which we say this is different from other cases. I understand. But it still requires us to expand, change, evolve what we understand, what so far exists in D.C. law. Is that right? Well, Your Honor can only do that if you conclude that our motion to remand was properly denied. No, I understand. Because there is no subject matter jurisdiction. No, I understand. But we have two different separate issues. I understand that. Let's get started on the second one first. We should finish the second one. So here, my problem with this is we have a substantial number of cases that describe our role in an eerie situation, which is what this is. Federal court trying to figure out what the common law of the District of Columbia is. In Tiddler, which is a case from 1988, we said, We take the law of the appropriate jurisdiction as we find it, and we leave it undisturbed. As the First Circuit correctly expressed this fundamental principle of full diversity jurisdiction, absent some authoritative signal from the legislature or the state courts, we see no basis for even considering the pros and cons of innovative theories. We must apply the law of the forum as we presently infer it to be, not as it might come to be. And this was repeated again in 2007 in the Pitt case where we cite Tiddler for the proposition in considering common law claims. Federal courts must apply existing law. We have no power to alter or expand the scope of the D.C. court law. Citing Tiddler for the proposition that, quote, it is not, we are not free to graft onto those state rules exceptions or modifications which may commend themselves to the Federal court, but which have not yet commended themselves to the state in which the Federal court sits. So doesn't that really, if you lose your, what is it, going to be your second point? Verrilli, Your jurisdictional argument. Your jurisdictional argument. Yes. Aren't you really only left with a plea that we send this case for certification? No, Your Honor. Well, in light of this, in light of your agreement that the common law, not only of the district, but of all the courts, of all courts, has not yet evolved to cover this principle. And given our principle that we can't evolve the common law, how can we decide in your favor the common law question? Your Honor, you can do what we asked you to do. We should certify the question. That's what I said. Other than certifying the question. Well, that's, I'm sorry, Your Honor, that's a pretty big other than. No, it's not. Because most, 99 percent of your brief is an argument that you should win on the merits. You have a small part of your brief, and then in the reply brief, and I'm not saying you missed anything. Of course, you didn't. You made a request for certification. But isn't it, isn't really that all you have on the merits at this point? Well, I recognize the reluctance of Federal courts to extend common law doctrine. It's not just reluctance. This is two precedents of our court that we have to follow. Yes, yes. Destruction. And with good reason. But there's also a line of cases in the Supreme Court, which we didn't think necessary to decide, which makes it clear that when these questions are left open and when the States have a procedure, as they do here, for certification of these State law questions to the highest court of the State, and it can be done and resolve the question without the Federal court involving itself in the business of determining whether the law has changed or evolved, it should be done. And that's what we asked you to do here. We didn't think it required a lot of explanation. Well, because we have case law, and when we certify. And normally we have some reason to believe that the State law may be evolving in that direction. And we don't have that here either. Well, the State has never addressed, the District of Columbia courts have never addressed anything like this. It has been 37-plus years since they've even talked about it, and even then only in a footnote about unfair competition, where they said it may include. And for this court to, in my view, unnecessarily reach this question, when there's an appropriate recognized means of allowing the District of Columbia court to do what we asked it, hoped it would do in the first instance, determine the law, we believe that that's the appropriate course. Now we should do the jurisdiction question. There are two bases on which the defendants removed this case to the Federal court. The first basis was that defendant Donald Trump, who was sued in his personal capacity, could remove it as a Federal officer. No question he is a Federal officer. The question is whether it is in the language of 1442A1. He is removing it in a cause which is for or relating to any act under color of his office. And we believe that he has to... Does the act include omissions? I'm sorry? Does the act include omissions? It characteristically does, I think. Yes, yes, yes. And our first claim is that he should have divested himself of this activity, the business, before he became president. At that time, if he had done so before that, there would be no act while he was a president in which to be... For relief, you asked that he be ordered to divest it. Yes. So it's an ongoing thing. It's not something that disappeared on January 20th. Well, but the wrong was committed. The act of which he stands, alleged to have done something improper, was the failure to divest before then. But, Mr. Morrison, your whole theory is based... The tortious actor is based on the fact that he's the president of the United States. If he weren't the president of the United States, you wouldn't have a claim. Why isn't that squarely within the... He is... The federal officer removal. There are two answers to that question. First is, it's not just because he's the president. He's an elected officer. And we would apply this to the mayor of the District of Columbia, any member of Congress as well, among other reasons, because the lease says so. But the second reason is, Your Honor, is even if we treat these acts as continuing acts going on in his administration, those are in his private capacity. They are not in his personal capacity. And the Supreme Court in the Fitzgerald case made it clear... You don't have a claim if he's not president of the United States or a federal officer. Your claim is based entirely on that, right? Yes.  Because the court has said that that provision is designed not to deal with the question of whether the officer has a status, a federal officer, but whether there is a particular act... Your theory, your tort, is based on him being a federal officer. Your tort is based on his status. I don't believe that's correct, Your Honor. I believe that cases like Johnson and Acker dealt with the question of whether the federal, the court, in that case the state courts before removal took place, would be in the process of ordering the president or the federal officer to do something that contradicts that person's federal office job. So in the case of Johnson, they said, the state of Maryland said... Well... It just happened to be, they happened to be a federal officer. Your whole case is based on an action in being a federal officer. I don't believe, I believe the court has been quite clear that that's not a status. The status as federal officer is not sufficient. And in those cases, the question was whether the... Unless your claim is based on the fact that he's a federal officer. That's my only point. I don't understand the distinction. Well, I claim that he's a... We claim that he's an elected officer, Your Honor. And that, of course, is the gist of the problem. But nothing he does with respect to the business has any bearing whatsoever on his federal duties and responsibilities. He can continue to do everything he wants as the president of the United States. And no court order here would affect that whatsoever. Suppose, Your Honor, instead of having the business before he became president, he bought this hotel after he became the president of the United States. That would be a clear act within the business, and you could point to that as the tortious act. But that act was in his private capacity. Indeed, Donald Trump himself, before he took office, made it clear in a press conference and in the white paper that we have in the joint appendix at 67 to 72, that he recognized the need to separate his private activities from his presidential activities, which, of course, is perfectly consistent with the use of the term outer perimeter in Fitzgerald, where it's clear that everything the president does while he's in office does not invoke his absolute immunity from liability. It's only those things which are within the outer perimeter of the president's responsibility that entitle him to claim any immunity. And there is no case in which all he needs to show is a non-frivolous argument. Yes. And I don't think he has a non-frivolous argument. Colorful is the word in the statute. I'm not sure what the difference between them is. But I accept non-frivolous, Your Honor, that that there is. He has any federal defense to the claim that we've raised under the law of the District of Columbia. There's nothing inconsistent with his special acts, unlike the postal driver in Johnson or the judge in Acker, who under the understanding that had that he was doing something illegal and could be theoretically enjoined from being a federal judge. None of that is going to happen here. The president can carry out all his official responsibilities. He just cannot carry out his. And let me give you some other examples of status. So suppose, Your Honor, that New York State has a law, which many states have, that you are entitled to a homestead exemption on your principal residence because you are residing there more than 50 percent of the time. Mr. Trump, if he assumed if he had that tax break, moved to Washington, D.C., he could not, because he's president, be able to comply with that at the same time as he complies with being president. And therefore, he would lose that neutral rule, which we say is a neutral rule here because it applies to other officials. Could the district impose property tax on the White House? No, Your Honor, because that's taxing the federal government. Operations of the federal government. Well, the tax would be imposed on the federal – that's McCulloch against Maryland, Your Honor. Right. So his argument here is that he's being taxed on his behavior because he's the president. It may not be a winning argument, but the – although we haven't asked for damages, that's – No, we have not, Your Honor. But it's equivalent to what you're asking for because you're asking him to give up the business. Yes, Your Honor. And you're not asking it based on a monuments clause or any federal claim at all. So it's a purely State law. Yes, Your Honor. Effective tax on his ability. I thought they were asking to resign from office. Was it that way? No, we simply observed that if he resigned from office, the case would be moved, Your Honor. But you do ask for that as one of the alternative remedies. We don't ask it as a remedy, Your Honor. We simply say that the case – until he resigns from office, the – I don't believe we asked that. I'm pretty sure we didn't ask that. I hope we didn't ask that. Or similarly, Your Honor, suppose that Congress changed the conflict of interest laws, said it applied to all officials, that they had to divest themselves of all business interests when they became the president. That kind of neutral law would not be offended by the immunities provisions given to the president. It would be a neutral law affecting all persons similarly situated, and it would not violate the Constitution. Hold, hold, hold. Let's be clear. If the District of Columbia passed a statute that said all members of Congress, when they are elected, must resign from their businesses, is that what you just said? No, I said Congress, Your Honor. No, what about if the District of Columbia did it? I believe that would be an interference with the federal – what they're carrying on in their federal business in the District of Columbia has no legitimate interest in the conflict of interest of federal officials. The legitimate interest of the District of Columbia here is to protect – Would there be a defense then? Is that – so there would be a defense if they raised that issue? I hadn't thought about it, but you've just given me a question. If they had to divest the – all members of Congress have to divest themselves from any business. I leave aside the possibility that law would ever be allowed to go into effect in the District of Columbia given our current status, Your Honor, but I would answer the question if a state – What if the state court interpreted its fair competition law as requiring that? Your Honor, I believe it would be constitutional because it's – because the immunity set up – it would be a colorable constitutional objection. That's really the question. It's an interesting hypothetical, which I had not thought of. Well, the question is how colorable colorable has to be. Well, we just heard it means frivolous. Non-frivolous. Non-frivolous. The Supreme Court in the Fitzgerald case and in subsequent cases has made it, I think, quite clear that the dividing line is between one's personal affairs and one's business affairs. We gave the example of then-President Clinton in the White House with his affair with Monica Lewinsky. He was President of the United States. The acts occurred in the White House, and we do not think he had a colorable federal defense to any claim that she might have brought against him. And we say that's essentially what we have here is that the President himself recognized the need, as the Supreme Court did in this case against Fitzgerald, to divide the world of presidential immunities between official acts and private acts. Those official acts could not necessarily be legal, but they are done as official capacity, and among other things, there are other means of redress for those. There is no other means of redress because these are in his personal capacity, and therefore they are not subject to this immunity. You said in your brief that Appell agrees that if liability were based on the President swearing in, that would raise at least a colorable immunity question. That's it, page 31. If the President hadn't been sworn in, there would be no liability under your theory, right? Well, he wouldn't be an elected officer. That's correct. So isn't the swearing in then a but-for cause of the liability, even within your own formulation of what would create colorable immunity? Well, I want to return to the words of 1442A1, which talk about an act. If we had premised the liability on that act of being sworn in, we would be running into that potential dilemma. But we are not premising on that act. Your claim is premised, at least in part, on non-resignation, which seems like the counterpart of being sworn in. So doesn't it depend on, completely, on his status as President? That takes me back to my second argument, which is that even if we pointed to the presidential act of being sworn in, if we treated that that was an act, it's still, the liability arises because it's the consequences of his personal acts as President, the ownership of the business, not his official acts. That's the dividing line. And that there is no colorable immunity for purely private acts, unlike the immunity for official acts. And even if you don't take the words acts literally in 1442A, you still must recognize that the court has set up this divide, and that, put another way, everything that the President does does not create an immunity for him, or even a basis for removal from the state court. Take the Clinton case, which I, Monica Lewinsky, which I gave before. If that case had been filed, and people do not normally file cases against high-ranking officials, in the superior court, could then-President Clinton have removed a tort case from the superior court to the federal court on the grounds it had a colorable claim to official immunity? I said, yes, the answer is no. And that's why the removal was improper here, because this case is about President Trump's private business activities, not his official acts as President. So, again, this is really interesting, I must say. But in your brief, you refer to the nature of the problem as the implied promise of favorable treatment by the Trump administration. So that's implied is normally what we talk about under color of law. But, Your Honor, I think we're- And the President has to be the President for this implied promise to go on. And likewise at 49 you say that the hotel is luring business away with the implicit promise that patronizing will curry favor with President Trump. They have an unfair advantage because the hotel and others promote the connection between it and the presidency. And here we're talking about the President's actual authority as President, whether appropriate or not, do benefits. But he would only have that authority if he were the President. That's not something he has the authority to do as a private individual who's not the President. Well, I certainly want to agree with Your Honor's last couple sentences, because he can't make any promises that the government will do something to favor a patron of the hotel unless the person who is the government. But I also want to be clear, Your Honor, we have- We're still only talking about the color of defense here. But, Your Honor- You're asking about, and the whole point here is about the implied promise of something that the President will do as President. But we have not said that it's the President's implied promise, Your Honor. We have said the implied promise, and I call Your Honor's attention to paragraph 18 of our complaint, which I just realized today that the district court had never mentioned. It's page 42 of the joint appendix. And we say the perception by many of the customers and prospective customers substantially aided by the marketing efforts of officers and employees of the hotel, not Mr. Trump, as well as members of the family of defendant Trump and others associated with him, that it would be to their advantage in their dealings with President Trump and other agencies of the government if they patronized that hotel. So we do not depend on President Trump's actively promoting the hotel. And so that, now you raise another question, which is, had you not sued President Trump, we would not be here. They wouldn't have been able to remove the case under the federal officer provision because, I mean, I appreciate they have another argument, but on the argument we're discussing today, because he wasn't the president, because he wasn't the defendant. So why did you sue the president? We sued the president. If what you're really complaining about is what you regard as unfair competition by the hotel, you could have had this case in superior court. Well, as Your Honor pointed out, they have another removal defense, which we have responded to, and I won't take the court's time on that. The reason we sued the president was because we didn't know what positions they were going to take with respect to two parts of the case. Number one, whether they would claim that we failed to join a necessary party under the local equivalent of Rule 19 because we had to have him as the president. We had to sue the owner of the hotel in order to get the relief we had. We didn't know whether they would make that argument. Is that an argument? I mean, you have to sue the owner of a hotel in order, I don't know. This is a limited liability corporation, Your Honor. We do not know how it's set up. We do not know what arguments they would make that we had to have the president. I suppose then you could have added him if that were required. They have never been. That's an interesting argument. I suppose you could have added him as a party if that had happened. And the second reason, Your Honor, was if it turned out that we needed to have discovery. It would have been. I thought you said there was no act by the president that matters here. All the acts are by the hotel. I said that we don't have any acts of the president dealing with his business activities that we alleged him to complain, Your Honor. I didn't say that it was impossible that the president has not done other acts purely in his business capacity that we might not want to rely on. We did not know what the facts would be at the beginning of this case. This case was filed in March of 2017, less than two months after the inauguration. And we thought rather than try to add the president later on, which would have slowed it down, and they would have removed to the federal court anyway under this other theory, we made the choice that we decided it was better to name the president and not have those problems down the road. And, you know, if the court were to dismiss President Trump now and reject their other grounds for removal, then the case would go to the Superior Court because there's no other basis of subject matter jurisdiction. We're not asking the court to do that, but Your Honor has raised the possibility. This would have been something to have raised what time you amended your complaint if the district court not have. Your Honor, we amended the complaint for one reason and one reason only. Not in their removal papers themselves, but in the motion in response to our motion to remand, they pointed to two subparagraphs in the complaint which suggested that we were alleging acts of the president while he was in office, but not the only basis for opposing removal. One of them was a clarification that the president had said to a senior member of the House of Representatives that look at the hotel, it's a wonderful place. It's reflected in the briefs. You haven't addressed the argument that essentially your theory turns, has the effect of allowing the District of Columbia to pose an additional criterion on qualification to be president. Well, Your Honor. You better say non-ownership of a competitive business. Our answer to that is that nothing prevented him from becoming the president or continuing in this office as president. It is in his personal capacity that the District of Columbia is imposing any obligations and for the reasons that I've expressed before, that his ability. You keep saying that, but the fact is that the consequence of your principle would be that there is a de facto additional qualification to become president and that is the absence of ownership of a competitive business, I guess, in the District of Columbia only, but then other states might follow suit. Isn't that the case? We are saying, Your Honor. Neutral laws which follow from combination of having power and ownership of a competitive business, that's the new rule. Our view is that neutral laws of general applicability to elected officers do not run afoul of the prohibition that Your Honor has referred to. This is a law that applies simply to either elected officials or perhaps only the president. Well, it does. Our view is, and we cite the federal lease that applies to, and we think that that's illustrative of the principle in the District of Columbia, that elected officials are not supposed to be in business when being in business enables them to leverage their elected office to gain business for their business. I don't know that the provision on leases can create a necessary criterion. I'm sorry, I didn't mean to suggest it did. All I said was that that's the principle on which we're operating and the fact that the president has to obey those general laws, like the postal drivers have to obey speed limits, does not impinge on the power of the presidency, that nothing in that law would say to the president you can no longer sign treaties, make appointments, or declare war. None of that would be affected by this, and it's only in his private capacity. And it's our view that the importance is to separate his business activities from his presidential activities, and that's what makes our case permitted and the other cases not. Thank you. Thank you. May it please the Court. The core theory of this lawsuit is that it violates D.C. law for the president to own a business. We know that not only from what I think Mr. Morrison just said, but from the face of the complaint. Paragraph 2 says plaintiff's claims, and I'm quoting here, are based on the unfair advantage that the hotel has gained from Donald J. Trump being the president of the United States. Paragraph 31 says that plaintiff has no legal basis to complain about competition before January 20, 2017, when Donald J. Trump began serving as president. And paragraph 42, as we've discussed a bit already, requests an injunction required, in the complaint's own words, requiring the hotel's closure or sale or President Trump's resignation. In other words, so long as the president wishes to be president, he must arrange his investments as D.C. law supposedly requires. These claims are clearly removable to federal court, and it is equally clear from the binding precedent of this court in the D.C. Court of Appeals that they fail on their merits. I'd like to begin with the jurisdictional question. We submit the most straightforward basis for removal in this case was the federal officer removal statute, which under Supreme Court precedent is construed broadly, unlike other statutes providing for removal, and there are only two relevant requirements. First, the federal officer must raise a colorable federal defense, and second, there must be a nexus between the complaint of conduct and the federal officer's asserted official authority. Now, plaintiff attempts to conflate these arguments at times, but if you go one by one through them using the applicable legal standards, the president's removal here satisfies both. So first, the colorable federal defense requirement. The notice of removal specified two defenses, absolute immunity and preemption. Now, we think based on the complaint that we removed from D.C. Superior Court, absolute immunity is a colorable defense because among the acts that were being complained of in the complaint were post-presidential acts, including in the inauguration parade, which, as we've discussed already, was removed from the complaint after the defendant's removed. But there is hardly any dispute, I think, that the president's actions within the inaugural parade, which allegedly promoted the hotel but were still in the inaugural parade, are at least within the outer perimeter of the president's official responsibility, and at least that's a colorable, non-frivolous claim. And so we think absolute immunity is itself enough to justify the colorable federal defense requirement. But preemption is as well, and I would suggest that the Acker case that Mr. Morrison mentioned is proof enough of that on its own. In that case, there was a revenue-raising local law that merely required all who performed an occupation within Jefferson County, Alabama, to pay a tax on the income they received from their profession. And two federal judges removed that successfully to federal court on the theory that the statute, I'm sorry, the ordinance, made it unlawful for them to engage in their profession without paying the tax. And the Supreme Court held, by a divided vote to be sure, that that was a colorable defense and that it was, in fact, it presented a nexus, a sufficient nexus, between the claim and the federal authority. And the defendants, I'm sorry, the dissenting justices, argued that it wasn't for an act under color of office, as the text of 1442A at the time required. Instead, it was for a refusal to pay a tax, which can be described in those general terms without any reference to the federal office, unlike the tort claim asserted here. And nonetheless, the majority said it was enough based on the structure of the ordinance and the theory that the federal officers were putting forward that the activities that gave rise to the asserted liability, namely the federal officials' status as federal officials and the income they received thereby, that was enough to satisfy the nexus requirement. And if that was true in 1999, when ACCR was decided, it's all the more true today, because in 2011, Congress amended the federal officer removal statute and the Removal Clarification Act to broaden the types of acts that can give rise, that can satisfy the nexus requirement. And we quote the legislative history, which has been adopted by several courts of appeals since 2011, that says the intention here not only was to broaden, but was to broaden removal to encompass all claims where a federal official is drawn into state court proceedings based on the, quote, status they have as federal officials. If we agreed with you as to the removal, why wouldn't we certify this question to the D.C. Court of Appeals? I mean, there's no case law out there at all. I disagree with that, Your Honor. There's two very relevant pieces of case law, one from this Court and one from the D.C. Court of Appeals, Proxmire being the one from this Court and the D.C. Court of Appeals decision in B&W management. And there is no reason to think that either of those would be insufficient on its own to resolve the questions in this case. B&W management continues to be cited by federal courts. I counted at least six times within the past decade for this very proposition, that it specifies what constitutes unfair competition in the district. And it continues to be cited by the District of Columbia Court of Appeals as well, although admittedly on the other points that it addresses. So there's no reason to think that it's bad law. And the same is true with Proxmire, which again continues to be cited, and we submit is binding on future panels given the lack of any indication that D.C. law has changed in the interim. The only data point we have on that question is B&W management itself, and if anything that takes an even more restrictive view of unfair competition. But to get back to the question about certification in particular, first of all, this was a passing request in a footnote in the opening brief that did not address the criteria for certification. And we did that to some extent in our response brief. But when this Court has a guiding principle for certification, and we suggest that the two cases I just mentioned are morbid enough, a discernible path is the language used, there is no reason to certify and trouble the State Supreme Court, in this case the District Supreme Court, with the question. Chief Judge Garland, you mentioned the Tiddler case earlier, and the Tiddler case also figures in the case that we cited on certification, Dial-A-Car, and in some ways the seminal case on these issues. Tiddler addresses certification as well, not only the sort of underlying eerie question. And Tiddler says that it's irrelevant, when the Court is fielding a request for certification, that D.C. might, quote, adopt a markedly different view of liability than that which they have heretofore held. And that is exactly because federal courts are obligated to apply not to amend existing law. And I think it now is beyond dispute that plaintiff is asking for a modification of D.C. law, and doesn't have any data to suggest that D.C. law is evolving in the way it desires. And so under the Tiddler case and subsequent certification decisions by this Court, it would be inappropriate to certify. It would, in fact, undermine the stare decisis value of Proxmire, which the District Court rightly felt bound by. And other courts of appeals have said, in similar circumstances, that if the goal is to overrule the federal circuit court's own decision, certification is an improper means for doing that. So we don't think certification is appropriate under this Court's case law, and also because the text of the D.C. Code requires that the question of law be determinative of the cause pending in this Court. And here, at least the President has two defenses that would make the unfair competition question not determinative, because if the President is right that D.C. law, D.C. unfair competition law, cannot do what Cork says it does, consistent with the Constitution, then that would make the claim, you know, foreclose the claim irrespective of whether it succeeds as a matter of district law. And we've also alleged an immunity defense, and under a whole host of decisions, immunity defenses should be determined at the earliest opportunity. Now, we think granting a 12B6 motion is the same time as considering on the merits, would be the same opportunity as when we first raised the immunity defense, but we would think it would be a threshold question that the Court should consider before certifying to the D.C. Court of Appeals, should the Court think that D.C. law was sufficiently unclear to justify that. So on the merits, I do want to take issue with one thing. Mr. Morrison. Can I just ask one question? If the President had not been named as a defendant, would it have made a difference? Well, I think we wouldn't be here under the Federal officer removal statute, I take it. I think that's correct, Your Honor. There are cases that deal with Federal officer removal by those who are acting under the authority of the Federal officer. I'm not sure that would apply here. It's not an issue I've really thought through before today. But we do have a second basis for removal, which is the complaint's reliance on the lease between the GSA and the U.S. government and the old post office, LLC. And we believe that under the Supreme Court's test in Grable and this Court's test in Bender, that the way that the complaint is framed, it necessarily presents the issue, which is actually disputed and substantial, as to whether the lease provision was violated by the President's assumption of office. And here, the GSA believes that the President and Trump old post office, LLC, are in compliance with that provision. And so the Court disputes it. But anyway, that's the only other basis that I could think of that would support removal. Having removed on Federal officer grounds, you know, that establishes the Court's jurisdiction and we cite cases for the proposition that future developments, including if the District Court had for some reason dismissed the President only, would not undermine the subject matter jurisdiction at the time of removal. But that's all kind of academic at this point. And unless the Court has any other further questions about jurisdiction, I'm happy to say a few words more about the merits of the claim. So I wanted to take issue with one thing Mr. Morrison said about the Proxmire case, because that case is not merely similar at some high level of generality. Everything alleged here, I believe, is alleged at least as clearly and perhaps more so in that case. So Mr. Morrison suggested that there were no implied promises. Well, there were explicit actions, according to the facts alleged in the Proxmire complaint, that Senator Proxmire was voting favorably to positions held by patrons and prospective patrons of the tour business that his wife owned. And that is much more than anything that's alleged in the complaint. Paragraph 18 merely alleges, taken at face value, the paragraph Mr. Morrison was citing earlier, that merely alleges that there's a perception of implied promises, supposedly based on marketing efforts that are not specified by the hotel and family members. But in any event, Proxmire contains exactly the allegation that Mr. Morrison suggests his client's complaint adds. And, of course, this Court said that even with that allegation, there were no allegations in the complaint to specify any tort against either defendant. So unless the Court has any other further questions, I think that Cork's failure to identify even one case or treatise or law review article suggesting that public officials are barred from owning businesses as a matter of tort law is enough to show that Cork's claim is without legal support, and we would ask that the Court affirm. Questions? Thank you. Opposing counsel is left to a couple minutes. I'd like to ask you about footnote 3 in B&W. You say in your reply brief that the Court in that footnote does not say that the list derived from Proxmire is exclusive. Right. But the examples that are given, which, if any, you see as closest to a business which trades on the kind of advantage that you're pointing to here? I would have to confess, Your Honor, that none of them is very close to what we have here. But I think one thing is interesting about that footnote. Even though that opinion was written four years after the Proxmire case came down, there's no reference to Proxmire in there. So it can't be implicitly noted that the D.C. Court of Appeals has approved any aspect of Proxmire. And by the same token, it can't be suggested that the D.C. Court of Appeals has in any way disapproved of Proxmire. Correct, Your Honor. Correct, Your Honor. And what about the statement in Proxmire itself that it's the scope of this Court has been limited to three categories and then lists those three categories? Well, with all due respect, Your Honor, to that opinion, which was, I believe, a per curiam opinion. I noticed you say two things. One, per curiam. I didn't realize per curiam opinions aren't as important. I would stop writing them if I knew that. And second, you say it's old. Well, we don't have a view that old cases aren't still the law. Yes, but it's old in relation to the law of the District of Columbia, Your Honor. It hasn't developed. Because nobody brought a case like this, Your Honor. The first time somebody has to bring a case, they have to bring a case. It's new. It's not here before. All right. Well, what do you say about the language that says it's limited? I'm sorry? The language in Proxmire that says it's limited to those three categories. That's the Court's view. I do not believe that courts, this Court or other common law courts, in developing common law, should make pronouncements saying it's limited to cases where we're dealing with a statute. Of course you could limit it. But common law is the essence of the common law is it develops over time. And the fact that nothing has been before it is not as though it's precluded by statute. So that case is wrong. The case is not the decision is not wrong. The word limited, it seems to me, if it's limited to this date, would be fine. But to treat that as if it was a statute that thereby ended to the question of what unfair competition should be in the District of Columbia is not, I think, a fair reading of that case. What about the language that I think opposing counsel is referring to, although it didn't actually cite the language, in Proxmire? The major allegation under the rubric of unfair competition is that Ms. Proxmire has utilized in the business the prestige and context enjoyed by a senator's wife to gain competitive advantage over the appellant. Why isn't Ms. Proxmire in that case equivalent to the hotel in this case? Because she hasn't made a promise that if you patronize her business, her husband will do a favor for you. But she did get space in the Senate that she would not be able to have gotten without her husband. The allegations in that case is that there are all kinds of entrees that only were available because of her husband. Is that? That is true, Your Honor, but it doesn't seem to me that that's parallel to what we have here. The crux of what we have here is that a private business is profiting from the implicit promises that the government official will do favors for those who patronize the business. That's a different set of allegations than there were in Proxmire. And it was unclear what they could have done in Proxmire to a person who was not an elected official, unclear what the relief they wanted was, except for money damages, perhaps. So let me just say one final word about the but-for causation question. But-for causation is an infinitely expandable notion like related to. And if this hotel had been purchased while Mr. Trump was in office instead of beforehand, I don't think anybody could say that that was an act that was protected by whatever immunity he may have. And since I believe, and I think the court, the case has sustained the proposition, section 1442A1, is about protecting presidential activities as president and not as a citizen who is both a citizen and individual has private businesses as president, that the immunity would not apply to the purchase case and therefore we don't think it applies here. The court has no further questions. Thank you very much, Your Honor. Thank you for an interesting argument on both sides. We'll take the matter under scrutiny.
judges: Garland, Griffith, Williams